RECORD NUMBER: 15-4767

# United States Court of Appeals

*for the*

# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

JUAN ELIAS LARA,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA AT ABINGDON

# OPENING BRIEF OF APPELLANT

**DANIEL R. BIEGER**
**DAN BIEGER, PLC**
**565 Volunteer Parkway**
**Bristol, TN 37620**
**(423) 573-4440**
**dan@biegerlaw.com**

*Counsel for Appellant*

## <u>TABLE OF CONTENTS</u>

Statement of Subject Matter and Appellate Jurisdiction .......................................... 1

Statement of Issues Presented for Review ................................................................ 1

Statement of the Case ................................................................................................ 2

      Statement of Facts ............................................................................................ 2

Summary of Argument .............................................................................................. 7

Argument .................................................................................................................. 8

      Standard of Review ......................................................................................... 8

      Discussion of Issues ........................................................................................ 9

      I.     Psychotherapist-patient privilege was not waived .............................. 9

      II.    The Written Waiver is Ineffective ...................................................... 10

      III.   Fifth Amendment Privilege Against Self-Incrimination ................... 12

Conclusion .............................................................................................................. 18

Request for Oral Argument ..................................................................................... 18

Certificate of Compliance

Certificate of Service

## TABLE OF AUTHORITIES

**Cases**

*Jaffee v. Redmond*,
    518 U.S. 1 (1996)............................................................................... 9

*Minnesota v. Murphy,*
    465 U.S. 420 (1984)................................................................ 12, 13, 14

*U.S. v. Bahr*,
    730 F.3d 963 (9th Cir. 2013) .................................................. 12, 13, 14, 17

*United States v. Bolander*,
    722 F.3d 199 (4th Cir. 2013) .......................................................... 9

*United States v. Kenny*,
    973 F.2d 339 (4th Cir. 1992) .......................................................... 9

*United States v. Whittington*,
    26 F.3d 456 (4th Cir. 1994) ........................................................... 9

**Rules and Statutes**

18 U.S.C. § 2250............................................................................... 2

18 U.S.C. § 3231 .............................................................................. 1

**Other Authorities**

U.S. Const. amend. V ................................................................... passim

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This is a direct appeal from a sentencing hearing in the federal district court on December 7, 2015. This litigation began in the Abingdon Division of the United States District Court for the Western District of Virginia for alleged violations of the laws of the United States. The United States District Court for the Western District of Virginia had jurisdiction over the prosecution pursuant to 18 U.S.C. Section 3231. The Notice of Appeal was filed December 8, 2015.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did admission into evidence at the sentencing hearing of a statement made by the defendant pursuant to mandatory participation in a Sex Offender Treatment Program ("SOTP") violate his psychotherapist-patient privilege?

2.      Was the document entitled "Sex Offender Program Acknowledgement of Confidentiality Waiver signed involuntarily by defendant and thus ineffective to waive the psychotherapist-patient privilege?

3.      Did admission of the defendant's treatment disclosure into evidence at the sentencing hearing violate the defendant's Fifth Amendment privilege against self-incrimination?

## STATEMENT OF THE CASE

Juan Elias Lara was charged with being a person required to register under the Sex Offender Registration and Notification Act (SORNA), traveled in interstate commerce, and knowingly failed to register and update his registration as required by the Sex Offender Registration and Notification Act, all in Violation of 18 United States Code, Section 2250. Joint Appendix (JA) Vol. 1 at 10. He pled guilty to the charge without a Plea Agreement.

On May 22, 2015 Lara filed a Motion in Limine to Preclude the Defendant's Statement of Other Bad Acts Evidence at Sentencing and, seeking to exclude all statements he made pursuant to the court mandated Sexual Offender Treatment Program (SOTP). Joint Appendix (JA) Vol. II at 501-505. The Motion in Limine was denied by Opinion and Order dated August 28, 2015. JA Vol. I at 99-111.

Lara was sentenced on December 7, 2015. The District Court departed upward from the United States Sentencing Guidelines based primarily on admissions the defendant made in the SOTP and sentenced him to 10 years in prison, the maximum penalty permissible. JA Vol. I at 481-487.

### Statement of Facts

The Statement of Facts is taken from the Opinion and Order of the District Court dated August 18, 2015. JA Vol. I at 99-111.

The facts, as developed at an evidentiary hearing and through exhibits, are essentially uncontested. The court heard testimony from two witnesses at the hearing - Rudy Flora, the defendant's SOTP therapist, and Bryan Hall, a state probation employee. Defendant Lara did not testify.

In December 2009, the defendant Lara, a 37-year-old with a GED certificate, completed a three-year Virginia prison sentence for aggravated sexual battery, and began a 20-year term of supervision. As part of his conditions of supervision, the state court ordered that the defendant follow certain "special instructions" for sex offenders, which included that he "[a]ttend and successfully complete" a SOTP approved by his probation officer, and submit to polygraph testing. JA Vol. II at 533.  In addition, the instructions specified that Lara allow the "sex offender treatment provider unrestricted communication with the probation and parole department, to include [his] supervising officer, regarding [his] attendance, level of participation, and any other information deemed necessary to protect the community from [his] sexually abusive behavior." *Id.*

In early 2010, the defendant was referred by the probation office to a SOTP administered by a Virginia Department of Corrections ("VDOC") contractor, Flora Counseling Services. At the hearing, Rudy Flora, a certified sex offender treatment provider and the owner of the counseling firm, testified as to the intake process

used for Lara's SOTP. First, in order to be admitted to the SOTP, Lara was

required to sign a form (the "Waiver Form") which included the following terms:

### ACKNOWLEDGMENT OF CONFIDENTIALITY WAIVER

> I hereby allow the therapist or group leaders to report to
> the appropriate authorities, police, probation and parole
> office, or any member of law enforcement any future
> occurrence or potential occurrence of an alleged criminal
> offense, or sexual offense on my part, regardless of how
> the knowledge is learned or revealed.
>
>     . . . .
>
> I have been informed and acknowledge that whatever I tell
> a therapist or group leader . . . is not privileged or private
> and hereby waive any and all such rights of confidentiality
> which may exist by statute or rule of law. There is no
> confidentiality regarding criminal matters that I disclose to
> my therapist or group leader associated with Flora
> Counseling Services.
>
> By signing this form you have agreed that if you
> communicate . . . any reported criminal or sexual
> behavior alleged, or potential threats of harm toward
> others, confidentiality will be waived to assure the
> protection of others.
>
> It is understood, however, that the therapist/group leader
> will attempt to respect my rights to privacy and
> confidentiality.

JA Vol. II at 536. In addition, Lara signed a separate form (the "Consent Form")

consenting to release of his information to VDOC, for use in "effectively

provid[ing] and/or coordinat[ing] services, benefits, and treatment planning." JA

Vol. II at 538. At the hearing, Flora stated that the failure to sign the form would bar a defendant's admission to the SOTP, and could constitute grounds for a probation revocation proceeding. JA Vol. I at 22, 24, 28.  Further, Flora testified that he explained the meaning of the forms to Lara, including that his statements made during therapy would be disclosed to VDOC. JA Vol. I at 36.  According to Flora, Lara signed these forms voluntarily and without any objection. JA Vol. I at 38-39. Next, Lara completed an intake interview with Flora, during which Lara disclosed some details of his sexual and criminal history. Bryan Hall testified that he also sat in on this meeting. Hall was Lara's primary contact. JA Vol. I at 49. Even though he was not a probation officer or specifically involved in Lara's SOTP, Hall's job duties included conducting office contacts, home contacts, job and home verifications (JA Vol. I at 49) and Hall took Lara to the polygraph examination. JA Vol. I at 51. At the time, Hall was also studying for a bachelor's degree in counseling and was thus allowed by Flora to sit in on the meeting in order to observe. JA Vol. I at 54. Lara did not object to Hall's presence at the interview. JA Vol. I at 53.

Following the intake meeting, Flora referred Lara to Jeffrey A. McCorkindale, another VDOC contractor, for the purpose of undergoing a polygraph examination. A polygraph examination was required pursuant to the terms of Lara's probation. JA Vol. I at 25; JA Vol. II at 533 ¶O.  Although Hall

drove Lara to the appointment, neither Flora nor Hall was present during the polygraph examination. As part of the polygraph testing, Lara filled out a form for McCorkindale regarding his sexual history. On the form Lara described over 70 sexual contacts going back over more than 25 years, including 44 with female minors - four of whom Lara claimed to have raped. JA Vol. II at 565-567 (History of Sexual Contacts). The list included details of the sexual contacts, including dates, names, number and types of sexual acts performed. In addition, during the polygraph examination Lara claimed to have murdered two men - one through a "hit" he ordered on another inmate while imprisoned, and one that he shot and killed on the street in Florida about 1997. The polygraph examiner opined that the test indicated that Lara was truthful in his admissions. A summary of Lara's statements was provided to both Flora and VDOC.  JA Vol. II at 540, 563-564.

Hall testified that McCorkindale had told him of Lara's incriminating statements. While transporting Lara and in the course of casual conversation about unrelated topics, Hall inquired as to Lara's statements. According to Hall, Lara acknowledged that he made these statements and claimed that they were truthful, without providing any further details.

Statements made by Lara were typed by the polygraph operator (JA Vol. I at 26) and subscribed to by Lara in a statement dated April 28, 2010, to-wit:

Risk Management Of Virginia
P.O. Box 1583, Salem, Virginia

Statement of Juan Elias Lara

April 28, 2010

Mr. Lara states that he has had a total of seventy-seven (77) sexual contacts since he was born. He states that forty-four (44) were female minors. He states that one (1) of them was a male minor, twenty-nine were female adults, and four (4) were male adult. He denies having any sexual contact with animals. Mr. Lara states that he forced four (4) of the female minors to have sex with him. He states that when he was in prison, he did cause the death of another inmate by ordering a "hit" on a convict who would have attempted to hurt Mr. Lara if he had not taken care of the problem. He states that he was involved in a shooting sometime in about 1997 in Florida when he got involved in some arguments and fights with a man who had actually broken Mr. Lara's nose, blackened his eye and broke some of his ribs. Mr. Lara states that months later, Mr. Lara saw him on the street and shot him twice, hitting him in the eye and in the heart, killing him. He states that he was never charged with that crime nor the one in prison.

JA Vol. II at 540, 564. This statement was admitted into evidence at the sentencing hearing over the objection of the defendant that it violated the psychotherapist-patient privilege and his Fifth Amendment privilege against self-incrimination. JA Vol. I at 99.

7

Following the polygraph testing, Lara attended and completed the SOTP. Flora testified that Lara was highly engaged, had good attendance, and successfully completed the program's requirements. Had Lara not successfully completed the program, Flora testified, his failure may have been grounds for a probation revocation proceeding. JA Vol. I at 22, 24, 28.

## SUMMARY OF ARGUMENT

The Acknowledgement of Confidentiality Waiver was invalid because it was not signed voluntarily. Lara's signature was required as a condition to preserve his liberty. The privilege was not waived when statements were disclosed to a third person because the third person was related to the probation officer and was present by invitation from Flora when statements were made to Flora. Admission into evidence of statements made by Lara as part of his participating in SOTP violated his Fifth Amendment privilege against self-incrimination because Lara's continued supervised release required participation in an SOTP requiring full disclosure of past sexual misconduct.

## ARGUMENT

## Standard of Review

Great deference is shown to a trial court's rulings on the admissibility of evidence. In general, a trial court's broad discretion in admitting evidence will not be disturbed on appeal unless there has been an abuse/discretion. *United States v.*

*Whittington*, 26 F.3d 456, 465 (4th Cir. 1994). Even if the admission of evidence was in error, a trial court's decision will not be reversed if the error was harmless. *United States v. Kenny*, 973 F.2d 339, 344 (4th Cir. 1992).

<u>Discussion of Issues</u>

I.    <u>Psychotherapist-patient privilege was not waived</u>.

The District Court held that Lara waived the privilege because the statement was disclosed by him to Bryan Hall, an unrelated third person. JA Vol. I at 107. The facts show that Bryan Hall was not an unrelated third person.

In *Jaffee v. Redmond*, the Supreme Court held that "communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501." 518 U.S. 1, 15 (1996). However, "[l]ike all testimonial or evidentiary privileges, the psychotherapist-patient privilege must be strictly construed." *United States v. Bolander*, 722 F.3d 199, 222 (4th Cir. 2013). "A patient may waive the psychotherapist-patient privilege by knowingly and voluntarily relinquishing it." *Bolander*, 722 F.3d at 223. "A waiver may occur when the substance of therapy sessions is disclosed to unrelated third persons or when the privilege is not properly asserted during testimony." *Id.* Further, the person invoking the privilege has the burden of demonstrating its applicability, including the absence of any waiver of it. *Id.*

The statements by Lara were made to psychologist Rudy Flora. During the intake interview with Flora, Bryan Hall was present. As found by the District Court, Bryan Hall was a state probation employee. JA Vol. I at 491. In addition, Hall was studying for a bachelor's degree in counseling and Flora allowed him to sit in on the interview with Lara in order to observe. JA Vol. I at 102.

There are no facts to indicate that Lara was advised he could object to Hall's presence or the legal effect Hall's presence could have.  On the other hand, the evidence proves that participation in SOTP was required under the terms of Lara's probation and that counseling with Flora was part of SOTP.

Bryan Hall was related both to the probation office that oversaw and enforced the terms of Lara's probation and was related to Flora who authorized Hall to sit in on the interview as Flora's apprentice.  Disclosure of the statement to a person related to the supervising probation officer did not waive the privilege.

## II.     The Written Waiver is Ineffective.

The District Court erred in finding that Lara knowingly and voluntarily signed the "Acknowledgement of Confidentiality Waiver" form.

It is clear that Lara was compelled to participate in the "state court mandated sex offender treatment program (SOTP). JA Vol. I at 357; JA Vol. II at 533 ¶J.  As found by the District Court "[A]s part of his conditions of supervision, the state court ordered that the defendant follow certain "special instructions" for sex

offenders, which included that he "attend and successfully complete" a SOTP approved by his probation officer, and submit to polygraph testing. JA Vol. II at 533 ¶O. In addition, the instructions required Lara to allow the "sex offender treatment provider unrestricted communication with the probation and parole department, to include his supervising officer, regarding his attendance, level of participation, and any other information deemed necessary to protect the community from his sexually abusive behavior. In early 2010, the defendant was referred by the probation office to a SOTP administered by a Virginia Department of Corrections ("VDOC") contractor, Flora Counseling Services.

At the hearing, Rudy Flora, a certified sex offender treatment provider and the owner of the counseling firm, testified as to the intake process used for Lara's SOTP. First, in order to be admitted to the SOTP, Lara was required to sign a form (the "Waiver Form"). JA Vol. 1 at 36, 38, 101. In addition, Flora testified that failure to sign the Waiver Form would bar a defendant's admission into the SOTP and could constitute grounds for a probation revocation proceeding. JA Vol. I at 41. A document is not signed voluntarily when the alternative to signing is revocation of probation and imprisonment.

III.   <u>Fifth Amendment Privilege Against Self-Incrimination.</u>

Similarly, the District Court found that Lara's statements were voluntary and therefore not a violation of his Fifth Amendment privilege against self-incrimination.

In *Minnesota v.* Murphy, 465 U.S. 420 (1984)**,** the U.S. Supreme Court noted that the general rule is that a person must claim the privilege against self-incrimination or lose it. *Murphy* noted that there is a well-known exception to the general rule that a witness must claim the privilege against self-incrimination or lose it if the suspect is in police custody and is not warned of his right to remain silent and of the consequences of his failure to assert it. *Murphy* did not apply the exception and held that a probationer who confesses to a crime during a non-custodial meeting with his probation officer is considered to have done so voluntarily unless he takes the initiative to assert his Fifth Amendment privilege. *Id* at 419 and 420.

Under the general rule the Fifth Amendment privilege is not self-executing: if you do not assert, you lose it. Lara did not assert his Fifth Amendment privilege. On the other hand if the exception had applied, the Fifth Amendment privilege would have been self-executing and need not have been claimed to be effective. This exception was applied in *U.S. v. Bahr, infra.*, a case that is very similar to *Lara*.

In *U.S. v. Bahr,* 730 F.3d 963 (9th Cir. 2013), Bahr had made admissions during a "'full disclosure' polygraph test" required by a sex offender treatment program upon which his supervised release was conditioned for an Oregon rape conviction. *Bahr* at 965. Bahr was subsequently convicted of federal child pornography charges, and he sought to suppress the use of his admissions at sentencing in the federal case. *Id.* The district court denied his suppression motion, but the Ninth Circuit held that the use of his compelled statements against him in the federal case violated the Fifth Amendment. *Bahr* at 965-966.

In *Bahr* the government argued that the holding in *Murphy* should apply and the defendant be held to have waived his Fifth Amendment privilege because he failed to assert it. The *Bahr* court distinguished Murphy noting:

(1)    Murphy's terms of supervision did not require answering the parole officer's questions. The terms of supervision only required that he be truthful; and

(2)    There was no reasonably perceived threat of revocation. *Bahr* at 966.

*Bahr* held that the right against self-incrimination is self-executing where its assertion is penalized so as to foreclose a free choice:

> When the government conditions continued supervised release or compliance with a treatment program requiring full disclosure of past sexual misconduct, with no provisions of immunity for disclosed conduct, it unconstitutionally compels self-incrimination. Revocation of supervised release is not necessary to violate the right,

the threat of revocation is itself sufficient to violate the privilege and make the resultant statement inadmissible.

*Bahr* at 965.

*Murphy* is not inconsistent with *Bahr*. Regarding the principal embodied by the Fifth Amendment that the Government may not "by coercion prove a charge against an accused out of his own mouth" the Supreme Court noted:

> …we have applied the principle only in cases in which at least two of the following statements have been true: (a) At the time the damaging disclosures were made, the defendant's constitutional right not to make them was clearly established. (b) The defendant was given sufficient warning that he would be asked potentially incriminating questions to be able to secure legal advice and to reflect upon how he would respond. (c) The environment in which the questions were asked did not impair the defendant's ability intelligently to exercise his rights. (d) The questioner had no reason to assume that truthful responses would be self-incriminating.

*Murphy* at 451. The analysis below will show that at least (b), (c) and (d) are not true here.

Lara, like Bahr, was required to complete an approved sex offender treatment program. JA Vol. I at 357; JA Vol. II at 533 ¶J.   Lara's terms of supervision required adherence to all rules and conditions of the program. JA Vol. I at 357.  In *Bahr* the program could include polygraph testing.  In Lara the program required polygraph testing. JA Vol. II at 533 ¶O.  During the testing

Lara, like Bahr, revealed additional crimes.  JA Vol. II at 542-556; JA Vol. II at 565; JA Vol. II at 571.

The documents prove that Lara was required to answer the Parole Officer's questions. Lara was required by the Conviction and Sentencing Order from Grayson County, Virginia to complete treatment as directed by the Department of Corrections. JA Vol. I at 357**.**  Lara was required to "follow my Probation and Parole Officer's instructions and be truthful, cooperative." JA Vol. II at 531 ¶6.

The special conditions ordered by the court required that Lara "shall follow Special Instructions for Sex Offenders." JA Vol. II at 531 ¶5. The Special Instructions for Sex Offenders required Lara to attend and successfully complete a Sex Offender Treatment Program (JA Vol. II at 533 ¶J), allow the sex offender treatment provider unrestricted communication with the probation and parole department, to include your supervising officer regarding your attendance, level of participation, and any other information deemed necessary to protect the community (JA Vol. II at 533 ¶K) and submit to any polygraph testing deemed appropriate by his supervising officer. JA Vol. II at 533 ¶O.

The statement that Lara signed resulted from the compulsory polygraph examination and statements Lara made to the counselor. JA Vol. II at 540-564. There is no indication Lara was warned that he would be asked to incriminate

himself or that perhaps he should talk to an attorney. The Psychosexual Evaluation (JA Vol. II at 542-556) states, "clinical testing revealed the patient has been involved in the death of two men" (JA Vol. II at 545) and the section entitled "Sexual History" includes statements concerning sex crimes. JA Vol. II at 546. Lara's statement was part and parcel of the Sexual History and the polygraph examination that were required of Lara. All of these disclosures required as a condition of his release. Like Bahr the government conditioned Lara's continued release on full disclosure of past sexual misconduct with no promise of immunity for disclosed conduct. JA Vol. II at 565, 567, 571-579; JA Vol. II at 569.

As in Bahr there was a reasonably perceived threat of revocation for failure to comply with the terms and conditions of his release. Lara's Conditions of Probation made it clear that the risk of revocation of supervised release was real providing:

> "You are being placed on probation/post release supervision subject to the conditions listed below. The Court or Parole Board may *revoke* or extend your probation/post release supervision and you are subject to *arrest* upon cause shown by the Court, the Parole Board and/or by the Probation and Parole Officer."

JA Vol. II at 531. The "environment" that Lara was ordered into made it clear that he had to comply with the demands of the Probation officer and the treatment

program leaving Lara with no reasonable thought that he had a right to resist any part of his conditions of release.

Lara signed a Sex Offender Program Acknowledgement of Confidentiality Waiver purporting to waive rights of privacy and confidentiality. Rudy Flora, Lara's counselor and principal of Flora Counseling Services, testified that the form was required for admission into the Sex Offender Treatment Program. If admission were denied, he risked returning to jail. In addition, Flora testified that the polygraph examination was required to remain in the program. He testified that he has seen people taken to jail for refusing to participate in the polygraph examination. The threat of revocation for non-compliance was very real.

Flora testified that Lara participated in the sex offender treatment program and completed every level. He was a willing participant who had a reason to assume that full disclosure of his past would benefit him. Lara had no reason to assume his truthful responses would be self-incriminating.

As in *Bahr,* Lara's continued supervised release required full disclosure of past misconduct with no provision of immunity for disclosed conduct. The use of Lara's compelled statements to determine a sentence in the pending criminal proceeding is unconstitutional and violates Lara's Fifth Amendment right against self-incrimination. It was error for the statements to be admitted at the sentencing hearing.

<u>CONCLUSION</u>

Statements made by Lara pursuant to participation in the SOTP should not have been admitted into evidence at the sentencing hearing because admission into evidence violated the psychotherapist-patient privilege and because they violated his Fifth Amendment privilege against self-incrimination. This case should be remanded for re-sentencing with instructions to deny introduction of the statements into evidence.

<u>REQUEST FOR ORAL ARGUMENT</u>

Oral argument is not requested.

JUAN ELIAS LARA
- by counsel -

*/s/ Dan Bieger*
Dan Bieger, Esq. (VSB #18456)
DAN BIEGER, PLC
565 Volunteer Parkway
Bristol, TN 37620
(423) 573-4440
(423) 573-4443 - Fax
dan@biegerlaw.com
Counsel for Juan Elias Lara

18

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 15-4767          **Caption:** US v. Juan Lara

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]    this brief contains _____3,975_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]    this brief has been prepared in a proportionally spaced typeface using
MS Word 2010 [*identify word processing program*] in
Times New Roman, 14 point [*identify font size and type style*]; **or**

[ ]    this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Dan Bieger

Attorney for appellant

Dated: 3/1/2016

# CERTIFICATE OF SERVICE

I certify that on  3/1/2016 _____  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

KEVIN L. JAYNE
OFFICE OF THE U.S. ATTORNEY
180 W. Main Street, Ste. B19
Abingdon, VA 24210
(276) 628-4161

/s/ Daniel R. Bieger
_____
Signature

3/1/2016
_____
Date